**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Nathaniel DYSON, Defendant-Appellant.**
No. 72–1889
**Summary Calendar.**\*

United States Court of Appeals,
Fifth Circuit.
Nov. 7, 1972.

---

\* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F. 2d 409, Part I.

E. Louis Adams, Albany, Ga. (Court appointed), for defendant-appellant.

William J. Schloth, U. S. Atty., Earl W. Carson, Jr., Asst. U. S. Atty., Macon, Ga., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

On June 17, 1969, the personnel managers of the Delaware State Hospital in Farnburst, Delaware, expected to augment their staff by the addition of conscientious objector Nathaniel Dyson who was assigned to the hospital by his local draft board in Albany, Georgia. Dyson thwarted their hopes and plans when he failed to show.

Although the Georgia state headquarters for the Selective Service System suggested on September 26, 1969, that Dyson's file should be submitted to the United States Attorney's office for the District of Delaware for criminal prosecution under the provisions of 50 U.S.C.A. App. § 462, no indictment was returned there until May 14, 1970.[1] On May 22, 1970, Dyson requested that the Delaware District Court transfer his case to the Middle District of Georgia pursuant to F.R. Crim.P. 48(b). That Court readily acceded, and on June 4, 1970, the records in the air-tight case against Dyson were received in the United States Attorney's office in Albany, Georgia. For some unknown reason the case was not set for trial until April, 1972.

Meanwhile in the same town, Nathaniel Dyson was quietly awaiting trial.

The case, tried April 3, 1972, resulted in a jury verdict of guilty and a sentence of two years. In this timely appeal the sole issue confronting the Court is whether or not the trial judge erred in denying defendant's motion to dismiss the indictment for want of an expeditious or speedy trial. Finding that he did, we must remand.

The claim of denial of a speedy trial is normally presented on the basis of the explicit language of the Sixth Amendment.[2] In the case at bar, however, the motion also embraces the stringent language of 50 U.S.C.A. App. § 462—the section under which Dyson was convicted: "Precedence shall be given by courts to the trial of cases arising under this title, and such cases shall be advanced on the docket for immediate hearing".[3] Dyson contends that he is protected not only by the overriding umbrella of the Sixth Amendment, but also by this specific statutory mandate. The

---

1. Although Dyson's Draft Board was located in Albany, Georgia, venue for failure to report is typically laid at the designated place at which the registrant was supposed to go. Johnston v. United States, 1956, 351 U.S. 215, 76 S.Ct. 739, 100 L.Ed. 1097; United States v. Neill, 7 Cir., 1957, 248 F.2d 383; United States v. Scott, 4 Cir., 1970, 424 F.2d 285.

We note this long delay merely in passing and not to suggest that this pre-indictment time is considered for purposes of the motion to dismiss. See United States v. Marion, 1971, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468; United States v. Edwards, 5 Cir., 1972, 458 F.2d 875 [1972]. But see United States v. Hanna, D.Del., 1972, 347 F.Supp. 1010 (eleven month post-arrest, pre-indictment delay deprived defendant of speedy trial).

2. The right was incorporated into the Due Process Clause of the Fourteenth Amendment and, thus, made binding on the States in Klopfer v. North Carolina, 1967, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1.

3. 50 U.S.C.A. App. § 462(a). The statute also places a considerable obligation on the Department of Justice by providing as follows:

"The Department of Justice shall proceed as expeditiously as possible with a prosecution under this section, or with an appeal, upon the request of the Director of Selective Service System or shall advise the House of Representatives and the Senate in writing the reasons for its failure to do so."

50 U.S.C.A. App. § 462(c).

738

Government, by directing our attention to the brief legislative history of the statute, urges that the call for expeditious action was intended by the Congress as a warning to would-be draft dodgers and a reassurance to the American public. Thus, the argument goes, it would be antithetical to construe the Act as conferring appreciable rights on the accused.

■■ Whatever may have been the moving force behind this congressional action, several things are plain. The first is that Congress concluded that the Sixth Amendment speedy trial standard was not sufficient. There were, Congress may well have thought, too many variables to a constitutional standard which must be emphatic yet flexible. Requiring "expedition" as a goal speedier than speedy, we must, in the absence of a strong showing of legislative purpose to the contrary, assume that Congress meant for this to be applied even-handedly. Draft refusers could expect to be brought to book quickly, but likewise they had the right to demand similar expedition of the awesome criminal sanction.

■ Of course all defendants are entitled to the fundamental right to a speedy trial. Klopfer v. North Carolina, 1967, 386 U.S. 213, 87 S.Ct. 988, 18 L. Ed.2d 1; Barker v. Wingo, 1972, 407 U. S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101. Since the statute requires defendants under prosecution for violations of the Universal Military Training and Service Act to be brought to trial at a pace faster than speedy and, hence, perhaps before other defendants on the court's calendar, it is obvious that Congress intended to insure a more rapid trial for offenses of this type. And for a right —either to "expedited" or Sixth Amendment "speedy"—so personal to the person being pursued, it would be incongruous to think that Congress entertained the notions in the Government's argument that a defendant has no standing to invoke a public right under the statute. This runs afoul of the myriad

cases which hold that the right to a speedy trial is a unique right endemic to both the Government and the accused. Beavers v. Haubert, 1905, 198 U.S. 77, 25 S.Ct. 573, 49 L.Ed. 950; Barker v. Wingo, supra; United States v. Marion, 1971, 404 U.S. 307, 92 S.Ct. 455, 30 L. Ed.2d 468; Klopfer v. North Carolina, supra; United States v. Auerbach, 5 Cir., 1969, 420 F.2d 921.

The idea that statutory standards concerning the right to a speedier trial which are perhaps more stringent than those constitutionally demanded may be effectuated by the courts or legislature is not new. The Supreme Court noted this in its recent review of the constitutional right. Barker v. Wingo, supra, 407 U.S. at 522–523, 92 S.Ct. at 2188, 33 L.Ed.2d at 112–113 & n. 17. See ABA, Project on Minimum Standards for Criminal Justice, Speedy Trial § 2.1 and comments. According to a recent pronouncement of the United States Court of Military Appeals, Congress itself intended to formulate standards for speedy trials in courts-martial which are more rapid than constitutionally required when it enacted Article 10 of the Uniform Code of Military Justice, 10 U. S.C.A. § 810. United States v. Burton, 1971, 21 U.S.C.M.A. 112, 44 C.M.R. 166.

■ From the standpoint of achieving an acceptable analytical approach to the statutory requirement and determining whether it has been satisfied, we start with the proposition that the maximum delay permissible under the statute cannot exceed the minimum delay allowed by the constitutional norm. Consequently, while not passing directly upon the Sixth Amendment claim, the nature of the Sixth Amendment's guarantee is highly relevant.

### Speedy

The Sixth Amendment guarantee of a speedy trial is in many ways unique among those rights secured to criminal defendants by the Constitution. In the first place, there is a direct societal interest in having the right, not merely

available, but secured. Barker v. Wingo, 1972, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, 112–113. Certainly benefits from other rights inure ultimately and vicariously to society at large, but none so directly as the right to a speedy trial. For example, there is no direct societal benefit when a heroin pusher must be set free because the Fourth Amendment and its current constitutional concomitant the exclusionary rule require that illegally seized evidence be suppressed. Indeed, there is palpable harm! Yet, we view the right to be free from unreasonable intrusions upon our privacy so highly that we are willing to pay this price to secure it. By contrast, society is directly benefited when a criminal is brought swiftly to justice and directly harmed when he is not. Similarly, it may frequently be advantageous for the defendant *not* to have a speedy trial—witnesses may die, evidence may disappear, and the like.

 Mr. Justice Powell's recent assessment of the right for a unanimous Supreme Court isolated four factors which must be appraised in each case to determine if the accused has been denied his right: [i] "Length of delay, [ii] the reason for the delay, [iii] the defendant's assertion of his right, and [iv] prejudice to the defendant." Barker v. Wingo, *supra*, 407 U.S. at 530, 92 S. Ct. at 2192, 33 L.Ed.2d at 117. Several other considerations are also inherent in the *ad hoc* approach which the *Barker* decision requires—the gravity of the charged offense and likelihood of repeti-

tion, the number and complexity of legal and factual issues involved, the availability of evidence, etc. In *Barker* the Court indicated that in considering these factors it would employ a qualitative balancing test to make its constitutionally required determination in each case. The Court did, however, sanction the promulgation, by courts or legislatures, of a non-constitutional quantitative test. Barker v. Wingo, *supra* at 522–523, 92 S.Ct. at 2188, 33 L. Ed.2d at 112–113 & nn. 19, 29. See generally, ABA, Project on Minimum Standards for Criminal Justice, Speedy Trial § 2.1 & Comments; Godbold, Speedy Trial—Major Surgery for a National Ill, 1972, 24 Ala.L.Rev. 265, 289–94. Many states have established fixed statutory periods for this purpose. E. g., Cal.Pen.Code § 1382. Courts have likewise established non-constitutional quantitative standards through their rule-making powers,[4] Second Circuit Rules Regarding Prompt Disposition of Criminal Cases (1971) (90 days if defendant is incarcerated; 6 months maximum in every case) or through appellate supervision of trial court procedure. United States v. Burton, 1971, 21 U.S.C.M.A. 112, 44 C.M.R. 166 (3 month rule for trial by court-martial). Cf. Hinton v. United States, 1969, 137 U.S.App.D.C. 388, 424 F.2d 876 (one year delay makes a prima facie case for denial of speedy trial). Because of the many variables which define what is "speedy" in a given context, we have refused in the past to establish a fixed time rule.[5] Brad-

4. Our Brother Godbold ably demonstrated the ineffectiveness of constitutional decisional means to cope with the problems of speedy trial. One development that he chronicles which may portend major reform toward getting speedy trials is the recently effective amendment to F.R. Crim.P. 50, 56 F.R.D. 174, which requires each district court in collaboration with the Judicial Council of the Circuit to adopt a precise plan for the "speedy" administration of justice. See Godbold, *supra*, at 292. A principal goal of that approach is to fix responsibility on the Court, often in terms of rather precise timetables, not just to leave it to the ini-

tiative of the parties. It is not a mechanism to quantify the Sixth Amendment.

5. A sometimes suggested rule has been that of the relevant statute of limitations. If that were the standard to be applied in this case, it is clear that Dyson's trial was timely brought. 50 U.S.C.A. App. § 462(d). However, statutes of limitations address themselves to the issue of what length of time is permissible prior to instituting criminal proceedings against an accused. The Supreme Court's opinion in United States v. Marion, 1971, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468, makes it clear that the considera-

ford v. United States, 5 Cir., 1969, 413 F.2d 467; McLeod v. United States, 5 Cir., 1971, 455 F.2d 933. As Mr. Justice Powell indicated in *Barker,* there is much to commend a rule of this type— but it is not constitutionally required. Using the *Barker* approach requires analysis of the four criteria.

In Waugaman v. United States, 5 Cir., 1964, 331 F.2d 189, 190, we said: "Although courts recognize that the test in this area cannot be a mechanical one, there is nothing very speedy about a trial occurring 2½ years after indictment." Yet, in United States v. Lane, 5 Cir., 1972, 465 F.2d 408 we upheld a conviction in which the trial followed the indictment by a period of two and a half years because of the complexity of the issues (conspiracy), the many witnesses who were necessary for the trial (85), the fact that over 25 defense motions were filed prior to the trial, and the fact that the defendant had never demanded an immediate trial.

This case is not *Lane.* Almost twenty-two months elapsed between the time the transferred file was received by the United States Attorney's office in Albany and the trial. While it is true that Dyson never demanded trial it is not clear that he was aware of his right to do so since counsel was not appointed to represent him until March 30, 1972, just four days before trial. See United States v. Strunk, 7 Cir., 1972, 467 F.2d 969, at 972. There were no pre-trial motions in Dyson's trial and the only witness for the government was a testimonial sponsor for the admission of the Selective Service Board's office file under the Business Records Act. Juxtaposing the prosecutorial task in *Dyson* with that which faced the prosecutor in

*Lane* makes it readily apparent why "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." Barker v. Wingo, *supra,* 407 U.S. at 531, 92 S.Ct. at 2192, 33 L. Ed.2d at 117.

A prosecution for draft evasion must be viewed in the context of the prosecutorial task. Typically, the primary evidence in the case is documentary. Therefore, the prosecutor has no claim that it would take a significant period of time to compile the evidence and insure the attendance of government witnesses. When the twenty-two month delay following receipt of the indictment in Albany is observed in this light, the reflection is "excessive".

This image of "excessiveness" is sharpened by the Government's total failure to proffer any explanation or justification for the delay. The only excuse nominally offered by the prosecutor at trial was that part of the delay was occasioned by the defendant's request for transfer. But it is clear that the trial judge was aware that the transfer comprised less than one month of the total period. Neither has the government made any effort on appeal to suggest that there is any reason for the delay.[6]

In Murray v. Wainwright, 5 Cir., 1971, 450 F.2d 465, we receded from the so-called "demand" rule of Harlow v. United States, 5 Cir., 1962, 301 F.2d 361, 367. Under the "demand" rule, the defendant must demand an immediate trial or be deemed to have waived his right to a speedy one.

■ Mr. Justice Powell's opinion in *Barker,* while realizing that the actions of the defendant in seeking a rapid trial are a relevant inquiry, underscored the

---

tions which underlie proscriptions against preindictment delays are not relevant to the inquiry of whether or not there has been a speedy trial within the meaning of the Sixth Amendment.

6. There is nothing in the statistical tables of the Administrative Office Reports to indicate any significant number in either one-year-old criminal cases or three-year-old civil cases, the usual markers of a

backlog. See Tables C 6a and D 3b of the Annual Report of the Director of the Administrative Offices of the United States Courts which reveals the following data for the Middle District of Georgia: (1) Civil cases pending for over three years: (a) 1970–1; (b) 1971–5; (c) 1972–12; (2) Criminal cases pending for over one year (without fugitive defendant); (a) 1970–3; (b) 1971–13; (c) 1972–7.

holding that demand is not a prerequisite for dismissal. This is especially true in the context of the present case where there is no indication that defendant Dyson was even aware of his right. "A defendant has no duty to bring himself to trial; the State has that duty". Barker v. Wingo, *supra*, 407 U.S. at 527, 92 S.Ct. at 2190, 33 L.Ed.2d at 115.

The remaining inquiry under *Barker* is whether or not the defendant has been prejudiced by the delay. The Court isolated three ways in which the defendant might be prejudiced by the delay [i] by lengthy pretrial incarceration,[7] [ii] by a substantial impairment of his defense, and [iii] by being subjected to public scorn and personal anxiety.

 It is undisputed that the delay in the present case did not impair the defense, as such, of defendant Dyson. But that is not the sole constitutional norm. *Klopfer, supra, Barker, supra.* "The prophylactic effect of the clause as a protection of the innocent is substantially eroded if the fact of conviction in unimpaired trials removes from appellate consideration the interests of minimizing the consequences of incarceration and public accusation." Godbold, *supra* at 285.

When the Supreme Court held in United States v. Marion, 1971, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468, that pre-indictment, pre-arrest time is not to be included in the computation of delay for purposes of a speedy trial motion to dismiss, the prime basis for that holding was that there had been no prejudice to the defendants by the three year delay between the commission of the criminal acts and the indictment. Contrasting the lack of notoriety and public rebuke to which the defendant Marion was *not* subjected with that degree which would constitute legal "prejudice," the Court said:

"Inordinate delay between arrest, indictment and trial may impair a defendant's ability to present an effective defense. But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy and create anxiety in him, his family and his friends."

404 U.S. at 320, 92 S.Ct. at 463, 30 L. Ed.2d at 478.

 The only specific incident of prejudice which the defendant alleges is that his church would not allow him to marry while the indictment was pending. In addition, he alleges the general claim of anxiety and apprehension of trial. But it is not his burden to prove prejudice. In Murray v. Wainwright, *supra*, we held: "Where the delay is not only excessive but the result of unexcused inaction or misconduct by the Government, it is prima facie prejudicial * * *. The burden then shifts to the Government which must demonstrate that defendant has not been prejudiced by the delay." 450 F.2d at 471. See Hoskins v. Wainwright, 5 Cir., 1971, 440 F.2d 69; Godbold, *supra*, at 283–84 & nn. 107–09. The Government has clearly made no effort to bear this burden.

### *Speedier*

 Without putting our decision on the Sixth Amendment, this review in light of those constitutional considerations convinces us that—all factors taken into account—the Government's inordinate delay in bringing Dyson to trial does not, on the present record, pass muster under the *minimum* statutory mandate. These considerations also bear, to some extent at least, on the Trial Court's initial burden on re-

7. See United States v. Strunk, *supra*.

mand. If the Government could offer cogent reasons for the delay the variables in our analysis might be greatly altered. Therefore, we think it appropriate to remand to permit the Government to make a showing to be followed by specific findings of fact and conclusions of law concerning the reason for the delay. Unless the Government can satisfy the district court that its delay was justified, the conviction must be set aside.[8]

Remanded.

8. Obviously, the defendant is entitled to rebut and make a counter-showing, and since each party is entitled to appellate review of this remanded issue, the present appeal will be deemed to continue to eliminate any question of appealability, jurisdiction and the like.