The **UNITED STATES**

v.

**Thomas Michael GOLON.**

**Crim. No. 73–345–C.**

United States District Court,
D. Massachusetts.

July 30, 1974.

See also, D.C., 378 F.Supp. 513.

James N. Gabriel, U. S. Atty., Robert B. Collings, Asst. U. S. Atty., for plaintiff.

Norman S. Zalkind, Boston, Mass., for defendant.

## MEMORANDUM and ORDER

CAFFREY, Chief Judge.

This matter came before the Court on defendant's pretrial motion to dismiss on the ground that the Government's delay in prosecuting the case violated the mandate of 50 U.S.C.A. App. § 462 (c) for an expeditious prosecution of Selective Service cases. Defendant was indicted on December 19, 1973, in a one-count indictment charging him with unlawfully, knowingly and wilfully failing and neglecting to perform a duty required of him under the Selective Service Act of 1967, i. e., performing civilian work contributing to the national health, safety or interest. The record before the Court and defendant's own testimony at the hearing on defendant's motion reveal that in 1970 defendant was classified as a conscientious objector by his local draft board and. pursuant to 50 U.S.C.A. App. § 456(j), was ordered to perform 24 months of civilian work contributing to the national health, safety or interest.

Defendant, through his own effort, found suitable alternative civilian work at the Metropolitan State Hospital in Waltham, Massachusetts. He commenced employment there on November 4, 1970, but did not obtain Selective Service approval of the job as being in the national health, safety or interest until December 14, 1970, from which date defendant was credited with meeting his Selective Service obligation.

On April 4, 1971, defendant terminated his employment at the Metropolitan State Hospital. On April 15, 1971, the Hospital notified the Massachusetts State Selective Service Headquarters of defendant's departure from this position. On April 19, 1971, the State Selective Service Headquarters sent a written inquiry to defendant concerning the reason for his terminating his civilian job without authorization. On May 19, 1971, defendant sent a written reply requesting reassignment. On May 25, 1971, and again on July 14, 1971, the State Selective Service Headquarters sent letters to defendant requesting information regarding his prospective civilian employment.

Defendant testified that after he left the Metropolitan State Hospital he went to the State Selective Service Headquarters at the JFK Federal Building in Boston and personally spoke to Edward Hill of the Selective Service Headquarters. During the conversation, the possibility of defendant's opening a non-profit community food store to meet his Selective Service obligation was raised. Hill told defendant, according to defendant's testimony, that he was aware of one conscientious objector who was meeting his civilian Selective Service obligation by working in a similar food store in New Hampshire. Defendant testified that Hill suggested that he start such a store

and apply to Selective Service for approval. Defendant also consulted the Cambridge Ministry of Higher Education, an organization which the Selective Service officially approved to supervise conscientious objectors. Defendant testified that he knew at this time that future contacts with the Selective Service would be necessary, although the record does not reveal any further efforts by defendant to clarify his status.

On July 2, 1971, defendant started a non-profit food store which, according to his testimony, he thought was a suitable job in which to fulfill his obligation, based on his conversation with Hill. Defendant stated that his income during the time he operated the store was $2,000 and that he sold his equity in a house in Hiram, Maine, to pay debts he was otherwise unable to meet due to a lack of sufficient income.

On August 23, 1972, the State Selective Service Board wrote to defendant assigning him to work at the Massachusetts General Hospital in Boston, commencing August 31, 1972, to complete his obligation. On October 5, 1972, the State Selective Service Headquarters was informed that defendant had not reported and on October 6, 1972 the United States Attorney was notified of the alleged violation, 18 months after the original notice to the State Selective Service Headquarters that defendant had terminated his employment with the Metropolitan State Hospital.

On March 20, 1973, the Assistant U. S. Attorney assigned to the case requested that the FBI investigate the case. On May 18, 1973, defendant was interviewed by FBI agents and informed them that he would not report to Massachusetts General Hospital to complete his obligation. Thereafter, defendant found regular civilian employment in the real estate business at a salary of approximately $10,000 a year.

On July 21, 1973, the Assistant U. S. Attorney requested copies of relevant Selective Service documents. The copies of the documents were received by the Assistant U. S. Attorney three months later, on October 11, 1973. On December 10, 1973, the Assistant U. S. Attorney spent one day reviewing the documents and decided that the case should be presented to the grand jury. On December 19, 1973, 14 months after the Assistant U. S. Attorney was notified by the State Selective Service Headquarters of defendant's alleged violation of the Selective Service laws and 32 months after the State Selective Service Headquarters was originally notified of the alleged violation, the case was presented to the grand jury and the indictment was returned.

The provision of the Selective Service Act of 1967 which is concerned with offenses and penalties and under which defendant was indicted unequivocally states:

"The Department of Justice shall proceed as expeditiously as possible with a prosecution under this section, or with an appeal, upon the request of the Director of Selective Service System or shall advise the House of Representatives and the Senate in writing the reasons for its failure to do so." (50 U.S.C.A. App. § 462(c).)

Additionally, § 462(a), in part, provides that:

"Precedence shall be given by courts to the trial of cases arising under this title, and such cases shall be advanced on the docket for immediate hearing, and an appeal from the decision or decree of any United States district court or United States court of appeals shall take precedence over all other cases pending before the court to which the case has been referred."

■ This statutory language has been construed as requiring defendants to be brought to trial thereunder *faster* than would be constitutionally mandated by the Sixth Amendment. United States v. Dyson, 469 F.2d 735, 738 (5 Cir. 1972); United States v. Daneals, 370 F.Supp. 1289, 1300 (W.D.N.Y.1974). Further, the time to measure the delay is not restricted to post-indictment delay as are

Sixth Amendment cases, United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), but begins with the referral of the case for prosecution to the United States Attorney by the State Selective Service Headquarters. United States v. Daneals, *supra*, 370 F. Supp. at 1299–1300.

Thus, the question for the Court is whether, considering that the case was referred to the United States Attorney by the State Selective Service Headquarters on October 6, 1972, the ensuing 14-month delay until the indictment was returned violated the mandate of § 462(c) that the Department of Justice proceed as expeditiously as possible with prosecution.

■ Sixth Amendment standards for a speedy trial are not controlling here, in light of the more stringent requirement of § 462(c) and the fact that the Sixth Amendment's right to a speedy trial does not attach to pre-indictment delay. Nevertheless, an analogy may be made to the constitutional standards in the absence of clear statutory guidelines, keeping in mind that the maximum delay allowable under the statute would fall short of the minimum delay which would raise a Sixth Amendment problem. United States v. Dyson, *supra*, 469 F.2d at 739. Additional reference may be made to Rule 48(b), F.R.Crim.P., which vests discretion in the Court to dismiss an indictment for unnecessary delay in presenting a charge to the grand jury and which imposes a more stringent standard than the Sixth Amendment. See United States v. DeLeo, 422 F.2d 487, 495 (1 Cir. 1970), cert. denied 397 U.S. 1037, 90 S.Ct. 1355, 25 L.Ed.2d 648; United States v. Cartano, 420 F.2d 362, 363 (1 Cir. 1970), cert. denied 397 U.S. 1054, 90 S.Ct. 1398, 25 L.Ed.2d 671. Since Rule 48(b) is addressed to "unnecessary delay," while § 462(c) affirmatively commands prosecution "as expeditiously as possible," the statutory standard must be considered stricter than the standard contained in Rule 48 (b).

■■ In determining whether a defendant's Sixth Amendment right to a speedy trial has been violated, the Supreme Court has set down four factors to be considered: (1) the length of the delay; (2) the reason for the delay; (3) defendant's assertion of his right; and (4) prejudice to defendant. Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Similar considerations are to be weighed in deciding a Rule 48(b) motion, see Fleming v. United States, 378 F.2d 502, 504 (1 Cir. 1967); United States v. Frost, 431 F.2d 1249, 1251 (1 Cir. 1970), cert. denied 401 U.S. 916, 91 S.Ct. 896, 27 L.Ed.2d 817, although under Rule 48(b) the defendant is not required to carry as strong a burden as in a Sixth Amendment claim. United States v. Navarre, 310 F.Supp. 521, 522 (E.D.La.1971). Defendant clearly has asserted his right and, because of the nature of Selective Service cases and, additionally, his testimony regarding his economic difficulties during the period of Government inaction, he has established a prima facie case of prejudice. United States v. Dyson, *supra*, 469 F.2d at 741; United States v. Daneals, *supra*, 370 F.Supp. at 1300. Thus, this Court is left only to weigh the length of the delay and the reasons therefor. See generally, Dickey v. Florida, 398 U.S. 30, 51–52, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970) (Brennan, J., concurring).

An analysis of the 14-month delay reveals that it took five and one-half months after receipt of notification from State Selective Service Headquarters of defendant's alleged violation for the Assistant U. S. Attorney to request an FBI investigation on March 20, 1973. Two months elapsed before the FBI personally interviewed defendant. Nine months after the October 6, 1972 notification and two months after the FBI interview, the Assistant U. S. Attorney finally requested relevant documents from the State Selective Service Headquarters. Another four and one-half months passed until, on December 10, 1973, the Assistant U. S. Attorney conducted a one-

day review of the documents and decided to present the case to the grand jury. Nine days later, the case was presented and defendant was indicted.

■ Selective Service Act cases, such as the instant case, are generally simple and unsophisticated. United States v. Dyson, *supra,* 469 F.2d at 740; United States v. Daneals, *supra,* 370 F.Supp. at ·1300; United States v. Rutkowski, 337 F.Supp. 340 (E.D.Pa.1971). Documentary evidence alone may often carry the Government's burden. United States v. Daneals, *supra,* 370 F.Supp. at 1300. See, e. g., United States v. Lavin, 480 F.2d 657 (2 Cir. 1973). The Assistant U. S. Attorney stated in his affidavit that he reviewed the case in one day in deciding to prosecute. A mere nine days thereafter, the instant case, and 39 other cases, were presented to the grand jury. The 14-month delay, in light of the simple nature of the case and without justification, violates the expeditiousness requirement of § 462(c). The additional 18 months that the State Selective Service Headquarters held the case after the notice of defendant's leaving the job at Metropolitan State Hospital and before referral of the case to the United States Attorney, while not specifically governed by § 462(c), certainly aggravates the situation and supports defendant's prima facie case of prejudice. It emphasizes the fact that the purpose of the statute, to bring Selective Service violators to the bar of justice as rapidly as possible, was violated. Cf., Sanchez v. United States, 341 F.2d 225, 228 n. 3 (9 Cir. 1965), cert. denied 382 U.S. 856, 86 S.Ct. 109, 15 L.Ed.2d 94; United States v. Blauner, 337 F.Supp. 1383, 1390 (S.D.N.Y.1971), which held that pre-indictment delays may have a bearing on whether a defendant's Sixth Amendment right to a speedy trial has been violated.

■ Thus, we are left to examine the Government's reasons for the delay. The Government, in the Affidavit of the Assistant U. S. Attorney who handled the case at the time of the delay in question, says that the delay was produced by a heavy case load, a crowded court docket in this district, and the careful and painstaking procedure followed in Selective Service cases. I find that such factors, while undeniably relevant, do not justify non-compliance with an express statutory, directive. The Government has the resources to overcome such problems and its failure to do so should not be held against defendant Mr. Justice Brennan, concurring with the Supreme Court's opinion in Dickey v. Florida, *supra,* discussed permissible reasons for Government delay under Sixth Amendment standards:

> "Perhaps the most important reason for the delay of one criminal prosecution is to permit the prosecution of other criminal cases that have been in process longer than the case delayed. But surely even this objective cannot justify interminable interruption of a prosecution."

*Id.* 398 U.S. at 52, 90 S.Ct. at 1576. Justice Brennan went on to quote the following language from King v. United States, 105 U.S.App.D.C. 193, 195, 265 F.2d 567, 569 (1959):

> "[C]ases have to take their turn. The case on trial is entitled to deliberate consideration; the others on the calendar stack up. At the same time, too much heed to practicalities may encroach· upon the individual's rights. *If the legislature were to refuse to install sufficient judicial machinery to perform the judicial tasks, it might be necessary to turn some accused persons loose.*" (Emphasis added.)

*Id.,* n. 18, 90 S.Ct. at 1576.

Under the more stringent requirement of § 462, whereunder the Justice Department and the Courts are commanded to give first priority to the expedition of Selective Service cases, Justice Brennan's limitation on amount of allowable delay due to a heavy prosecutorial caseload and crowded court dockets strongly undercuts the Government's argument in the instant case. It should be noted that the cases cited by the Government, some

of which involve longer delays than 14 months, are not controlling because all of them were decided under Sixth Amendment speedy trial standards and not § 462.

I therefore rule that the Government's prosecution of this case was not conducted as expeditiously as possible as mandated by § 462(c) and that defendant has been prejudiced thereby. Accordingly, it is

Ordered that defendant's motion to dismiss be, and it hereby is, granted.