**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Richard Albert PEREIRA, Defendant-Appellee.**

**No. 74–4198.**

United States Court of Appeals, Fifth Circuit.

Dec. 12, 1975.

---

William F. Duane, Asst. U. S. Atty., Orlando, Fla., for plaintiff-appellant.

Donald C. Beskin, Edward F. Keezel, II, Orlando, Fla., for defendant-appellee.

Before BROWN, Chief Judge, TUTTLE and RONEY, Circuit Judges.

TUTTLE, Circuit Judge:

The United States appeals from an order of the trial court dismissing an information against the defendant for failure to report for induction into the Armed Services. The failure to report for induction occurred on March 23, 1971. The first indictment against the defendant was returned on August 6, 1974; both that and a later indictment of November 13, 1974 contained minor factual errors. Thus, the Government proceeded with a one count information filed in open court on November 20, 1974, the day set for trial.

Although defendant-appellee contends that the long delay in the Government's first "accusing" the defendant is a violation of his rights under the Sixth Amendment to the Constitution of the

United States,[1] which justifies the dismissal of the charge against him, the major issue on appeal is whether a statute recently enacted by the Congress, appearing at 50 U.S.C. § 462(c) (App.)[2] was properly held to give an affirmative right to defendant to complain of less than "expeditious prosecution" where there was no specific request by the Director of Selective Service for expedition by the Department of Justice.

■ Because the delay in this case is pre-indictment and pre-arrest and, thus, before the defendant became an accused person, no Sixth Amendment protections are available to him. *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).[3]

Pereira's right to dismissal must rise or fall, then, upon a construction of the statute which, according to its literal terms, requires the Department of Justice to proceed as expeditiously as possible with the prosecution "upon the request of the Director of Selective Service System." Without clearly explaining away the language of the section "upon the request of the Director" it appears to be the argument of the defendant that the reference of the defendant's case by the Selective Service System to the local United States attorney constituted a "request of the Director of Selective Service System" that the Department proceed "as expeditiously as possible with the prosecution under this section." Further, Pereira contends that even if his

argument in this connection is incorrect, the point was never made in the trial court, and therefore should not be considered on appeal. That is to say, during the argument of the motion for dismissal the Government did not call attention of the trial court to the language of the statute that refers to a "request of the Director of Selective Service." However, we conclude that since the dismissal of the case against Pereira depends upon a construction of this section of the statute it is essential that we consider it with all of its terms in order to test the validity of the contention.

This Court has previously held that another section of 50 U.S.C. § 462 (App.) does create a right in the defendant to a speedy trial, more speedy than would be required under the Sixth Amendment standing alone. *United States v. Dyson,* 469 F.2d 735 (5th Cir. 1972). However, the sub-section before the Court in *Dyson* dealt with post-indictment proceedings. Section 462(a) provides: "precedence shall be given by courts to the trial of cases arising under this title, and such cases shall be advanced on the docket for immediate hearing." In the *Dyson* case the accused complained that the delay between indictment and trial violated the provisions of this section. The United States took the position that the amendment to § 462 "was intended by the Congress as a warning to would-be draft dodgers and a reassurance to the American public. Thus, the argument goes, it would be antithetical to construe

1. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."

2. "The Department of Justice shall proceed as expeditiously as possible with a prosecution under this section, or with an appeal, upon the request of the Director of Selective Service System or shall advise the House of Representatives and the Senate in writing the reasons for its failure to do so."

3. While it is true that even though without the protection of the Sixth Amendment an accused person is not without an opportunity to obtain relief under the due process clause of the Fifth Amendment based upon matters occurring pri-

or to arrest or indictment, it is clear that Pereira did not allege any such basis for falling within this class of cases. As stated by the Court: "The Government concedes that the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it was shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellee's rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused. (Footnote omitted). *Cf., Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Napue v. Illinois,* 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959)." 404 U.S. 324, 92 S.Ct. 465.

the act as conferring appreciable rights on the accused." 469 F.2d 735, 738.

To the contrary, we held that:

"Whatever may have been the moving force behind this congressional action, several things are plain. The first is that Congress concluded that the Sixth Amendment speedy trial standard was not sufficient. There were, Congress may well have thought, too many variables to a constitutional standard which must be emphatic yet flexible. Requiring 'expedition' as a goal speedier than speedy, we must, in the absence of a strong showing of legislative purpose to the contrary, assume that Congress meant for this to be applied even-handedly. Draft refusers could expect to be brought to book quickly, but likewise they had the right to demand similar expedition of the awesome criminal sanction."

In discussing the provisions of § 462(a), the opinion in *Dyson* commented in footnote 3: "The statute also places a considerable obligation on the Department of Justice by providing as follows [here followed a quotation of § 462(c), the section with which we are here concerned]." We, therefore, conclude that this Court has aligned itself with the principle that whatever provisions are made in this statute for the expeditious handling of either prosecution or trial creates a right not only in the Government but also in the defendant to demand what the statute clearly intends to provide.

■ Unfortunately for the hopes of the defendant in this case, however, we find it impossible to conclude that the provisions of sub-section (c) become effective, and thus create any right either for the prosecutor or for the accused, unless and until a specific request is made by the Director of Selective Service.[4]

We must associate ourselves with the Court of Appeals for the First Circuit in the case of *United States v. Golon,* 511 F.2d 298 (1st Cir., 1975). In that case, the Court said:

"There is no question but that Congress felt that draft cases should in general be more vigorously pursued. It took two steps to accomplish this purpose. Section 462(a) had given priority to prosecution of draft cases on court dockets where requested by the Attorney General. By deleting the prerequisite of such a request, Congress elevated all draft cases, after indictment, to a position of priority. And in § 462(c), it gave added authority to the Director to call for prosecution where he might feel there was untoward reluctance to seek indictment by the Justice Department. But there is no substantial support for the conclusion that Congress intended to strip away entirely the prosecutorial discretion reposed in the Justice Department and insist that an indictment be sought in every referred case, no matter what the result of the investigation of the case. It is true that even under § 462(c) final authority rests with the Justice Department, which may choose to report to Congress on its reasons for not prosecuting if that is its decision. But this fact is but another indication that the section is a remedy which must be specially invoked by the Director of Selective Service.[2] In 1971, the U. S. At-

[2] Because of our resolution of the other issues, we need not decide whether a specific request made by the State Selective Service Headquarters is that of the Director of Selective Service for purposes of § 462(c).

torney for Massachusetts presented 84 referred cases to a grand jury, and declined prosecution on 220; in 1972,

4. We do not decide here, as it is not necessary, whether a specific request by the local draft board, addressed to the Department of Justice through its representative, the local United States attorney, demanding that the Depart-

ment proceed as expeditiously as possible with a prosecution would constitute the triggering effect required by the section. Here no such request was made.

99 were presented and 189 declined; and in 1973, 89 were presented and 236 declined. We cannot accept the suggestion that Congress anticipated or intended that a full report be made to the Senate and House of Representatives in each of the 'declined' cases. Not only would such an interpretation indicate a massive and sustained violation of § 462(c) by the U. S. Attorney, but the apparent failure of Congress to respond to this flagrant nonfiling of explanatory letters would be inexplicable."

■ By stating above that we agree that this section does give rights to a defendant, we mean to indicate that once the triggering action, that is a request by the Director of Selective Service to the Department of Justice for expeditious action, is taken any failure by the Department thereafter to comply with the requirements of the act that it "proceed as expeditiously as possible with a prosecution under this section" would entitle a defendant to voice his complaint and to be heard on his complaint that he has been denied a benefit conferred upon him by this statute.

Because of the disposition we make of the case it is not necessary for us to reach the question of whether the accused or the Government would have the burden of establishing or disproving prejudice to the defendant if the Court should determine that the denial of expedition violated the statute.

The trial court, without the benefit of argument by the United States on the point which now appears to us to be controlling, granted the motion to dismiss. We conclude that such action by the trial court, based as it was upon an incomplete consideration of the terms of the statute, was error.

Pereira makes the further contention here that the Government is barred from an appeal of the trial court's judgment dismissing the indictment because, as he contends, if the Government succeeds here a trial hereafter will result in placing him in jeopardy a second time in violation of the double jeopardy provision of the Fifth Amendment to the United States Constitution. The appellee confects this argument in the following manner: the Supreme Court has said that in the case of a jury trial, jeopardy attaches when a jury is empanelled and sworn; here, instead of a jury having been sworn, Pereira waived a jury and consented to a non-jury trial; the trial court had thus acquired complete jurisdiction to try him; the order of the court thereafter entered dismissing the indictment for other than defects on the face of the indictment (a consideration of fact issues) is to be equated with a judgment on the merits of the case, or at least, with a dismissal of a jury case after evidence had been received.

■ The Government's right to appeal from a trial court's disposition of a criminal prosecution adverse to it is, of course, limited by the Fifth Amendment. It is now clear that this is the only limit placed upon the Government's right of appeal. The Supreme Court in *Serfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1974) stated:

> "In light of the language of the present version of § 3731, including the admonition that its provisions 'shall be liberally construed to effectuate its purpose,' and of its legislative history, (footnote omitted) it is clear to us that Congress intended to authorize an appeal to a Court of Appeals in this kind of case so long as further prosecution would not be barred by the Double Jeopardy Clause (footnote omitted)."

420 U.S. 377, 387, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265.

■ We therefore must determine whether an appeal here from the trial court's order of dismissal of the indictment violates the double jeopardy clause.

The record here discloses that before the filing of the information upon which Pereira was to be tried he had filed a written waiver of jury, as required by Rule 23(a) of the Federal Rules of Crimi-

nal Procedure.[5] When this earlier indictment had been withdrawn because of a technicality and the information filed, the parties were already in court and the following discussion took place after the arraignment at which the defendant plead not guilty:

"THE COURT: All right. Are you ready for trial?

THE DEFENDANT: Yes.

THE COURT: All right. You have filed a waiver of indictment, how about the waiver of the jury trial?

MR. GECKER: Your honor, we do waive a jury trial. We thought we sent in a form but apparently we did not. We do have one that is quickly made up. We can present that—it is just a simple—

THE COURT: I need to have a written waiver of the jury trial filed and the Government needs to file a consent to a non-jury trial.

They already filed one in the other case, but I want one in this new case.

MR. DUANE: Yes, Your Honor.

THE COURT: All right. Mr. Pereira, you may be seated.

I think, gentlemen, I will hear the Motion to Dismiss at this time, then, if I deny that, you can prepare your waivers."

Then following a hearing on the motion to dismiss the court took a recess after making the following comments:

"THE COURT: All right, How long will it take to try this case if we go to trial?

MR. DUANE: The Government intends to call four or five witnesses, Your Honor. We don't consider more than a day.

However, we would like short recess so we can take care of the question of identity, take handwriting exemplars, from the defendant. We

have an FBI agent here, Your Honor.

THE COURT: All right.

Do you have any estimate as to how long your side of the case will take, Mr. Gecker, if you try the case?

MR. GECKER: We have no witnesses, Your Honor.

THE COURT: Gentlemen, we'll be in recess until one o'clock.

Now, when we resume I would like to have all of your paperwork completed including the consent to a non-jury trial, that is, assuming your client wishes a non-jury trial. We will go to trial if he doesn't. We're going to have to set it down for a jury trial.

In your case it would be a waiver of right to trial by jury and the Government, of course, has to file a consent.

You have got a consent in the other case but we need one in this case."

Upon resuming at one o'clock the court granted the defendant's motion to dismiss the information as a result of which he stated:

"It is therefore ordered that the information in this case be and the same is hereby dismissed with prejudice."

Here it is clear that there had literally been no waiver or consent by the Government or approval by the court of the jury trial down to the time when the motion to dismiss had been submitted to the court. Although both the defendant and the United States had clearly indicated their oral understanding that such a waiver would be forthcoming and be acceptable to them, it may well have been the purpose of the trial court not to note its agreement to that effect prior to the hearing of the motion to dismiss because of its concern with the very issue that is now raised; that is, that conceiv-

---

5. Rule 23—*Trial by Jury or by the Court.*

(a) *Trial by Jury.*

Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government.

ably the argument might successfully be made that once the requirements of the Rule have been satisfied the trial court would have acquired full and complete jurisdiction of the case which was ultimately to be tried. In any event, the Rule had not here been complied with until after the trial court disposed of the motion to dismiss.

The question dealing with the time when a trial judge in a non-jury case has proceeded so far as to cause jeopardy to attach is not completely clear. In the *Serfass* opinion, *supra,* the Court said:

"The Court has consistently adhered to the view that jeopardy does not attach, and the constitutional prohibition can have no application, until a defendant is 'put to trial before the trier of the facts, whether the trier be a jury or a judge' " quoting *United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). See *Kepner v. United States,* 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114, 128, 130–131 (1904); *United States v. Macdonald,* 207 U.S. 120, 127, 28 S.Ct. 53, 52 L.Ed. 130 (1907); *Bassing v. Cady,* 208 U.S. 386, 391–392, 28 S.Ct. 392, 393, 52 L.Ed. 540 (1908); *Collins v. Loisel,* 262 U.S. 426, 429, 43 S.Ct. 618, 67 L.Ed. 1062 (1923).

The Court also stated: "in a non-jury trial, jeopardy attaches when the court begins to hear evidence" citing *McCarthy v. Zerbst,* 85 F.2d 640, 642 (C.A.10, 1936) and noting: "see *Wade v. Hunter,* 336 U.S. 684, 688, 69 S.Ct. 834, 836, 93 L.Ed. 974 (1949)." Under any construction here, it is plain beyond peradventure that the court and the parties both understood that the only matter pending at the only hearing that was conducted was on the motion to dismiss either because the defendant's Sixth Amendment right to a speedy trial or the statutory requirement of a speedy trial in Selective Service cases had been violated or because a statutory pattern had created a right the denial of which would be a violation of his rights to procedural due process. It was within the contem-

plation of all the parties and the court that a trial, if held, would be a totally different event.

We reach no other issues that may be involved in the case except those here discussed.

The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.