THE STATE OF OHIO *v.* WORDEN.

(No. CR-83-24 — Decided
October 15, 1985.)

Court of Common Pleas of
Morgan County.

*Richard L. Ross,* prosecuting attorney, and *Edward Buonopane,* for plaintiff.

*Clyde Collins,* for defendant.

SAFRANEK, J. This case is before the court on defendant's motion to dismiss the indictment, which motion contends that the defendant, Robert Scott Worden, has been denied his constitutional right to a speedy trial.

This case is a sequel to an earlier case, No. CR-83-18. In that earlier case, the defendant appeared before the court on June 8, 1983 and (1) acknowledged receipt of a bill of information, (2) waived his right to counsel, (3) waived his right to require presentation of his case to a grand jury, (4) waived his right to a jury trial, and (5) entered a plea of guilty to two counts, each charging the second degree felony of burglary, and one count charging petty theft. The court accepted his guilty pleas, ordered a presentence investigation and released the defendant on his own recognizance.

The defendant was again before the court in case No. CR-83-18 on June 17, 1983 at which time he received sentences of two to fifteen years on each of the two burglary offenses and six months on the petty theft charge, all sentences running concurrently. He was delivered to the Mansfield Reformatory on June 23, 1983. The entry reflecting the proceedings upon sentencing indicates that the investigation initiated as a pre-sentence investigation was to continue as a post-sentence investigation, and that it had not, at the time of sentencing, been completed.

This case, No. CR-83-24, was initiated by an indictment filed on July 20, 1983. The indictment alleges (1) one count of aggravated arson, this apparently with respect to one of the same residences that the defendant pled guilty to burglarizing and on the same date, (2) one count of escape from the Morgan County Jail on June 12, 1983, which interestingly soon followed the date Judge Robert M. Daniel had ordered that the defendant be released on his own recognizance, June 8, 1983, but preceded defendant's appearance in court for sentencing in case No. CR-83-18, and (3) two counts of breaking and entering and one count of auto theft, all of which were apparently part of a course of conduct closely following upon the escape.

The file indicates service of the indictment on the Superintendent of the Mansfield Reformatory sometime between July 29, 1983 and August 1, 1983. The defendant testified that he received a copy of the indictment, and the court finds that he did.

The prosecuting attorney testified that he sought no order from the court directing the sheriff to obtain the defendant from the reformatory and return

him to Morgan County for arraignment in this case, until he sought the order filed herein on April 4, 1985 which directed the sheriff to have the defendant before the court for arraignment on April 11, 1985. The court finds that no such prior effort was made.

The defendant was arraigned on April 11, 1985, at which time counsel was appointed for him. The defendant's motion to dismiss was filed within the requirements of Crim. R. 11(C) on May 15, 1985.

The landmark case setting forth a method of analysis for determining in individual cases whether there has been a deprivation of the Sixth Amendment right to a speedy trial imposed by the Due Process Clause of the Fourteenth Amendment on the states is, of course, *Barker* v. *Wingo* (1972), 407 U.S. 514.

The Ohio cases generally refer to the *Barker* approach approvingly without being specific as to whether the approach is required by the Ohio Constitution as well as the Amendments to the United States Constitution. In *State* v. *Turner* (1982), 4 Ohio App. 3d 305, however, mention of the Ohio Constitution is so intermingled with a *Barker* analysis that the case must be taken to stand for the proposition that the speedy trial requirements of the Ohio Constitution, while not necessarily co-existent with those of the United States Constitution, are consistent with the philosophy of *Barker*. This court concludes that such is the law.

The Supreme Court, in *Barker,* identified four factors to be considered and balanced. Each factor is to be weighed and balanced both with the other three and with other factors. The Supreme Court stated expressly at 533 that none of the four factors identified was "either a necessary or sufficient condition to a finding of a deprivation of the right to a speedy trial." Specifically, at least with regard to the federal right, it is clear that an affirmative demonstra-

tion of prejudice to the defense at trial is not necessary to prove a denial of the constitutional right to a speedy trial. *Moore* v. *Arizona* (1973), 414 U.S. 25.

### Length of Delay

The delay here was approximately twenty-one months from the date of indictment to the date of the arraignment and approximately twenty months from service of the indictment to arraignment. The delay that may be tolerated depends upon the complexity of the case and is shorter for street crimes, such as defendant is charged with here, than for, say, conspiracy cases. *Barker, supra,* at 530-531.

At the hearing on defendant's motion to dismiss, the prosecutor inquired of deputy Vickers, who testified that the defendant, before he was transported to the reformatory to serve the sentences imposed in the earlier case, case No. CR-83-18, made statements implicating himself in at least several of the offenses giving rise to the present indictment. These statements are mentioned in and attached to the discovery in the file. The discovery lists only eight prosecution witnesses. Considering that the prosecutorial task would appear to be straightforward and not logistically formidable, the length of the delay has been inordinate.

The consideration of this factor tips the balance heavily toward a determination that the defendant's speedy trial rights afforded by the Ohio Constitution and by the Sixth and Fourteenth Amendments to the United States Constitution have been denied.

### Reasons for the Delay

Upon inquiry by the court as to the reasons for the delay, the prosecuting attorney testified that it was his understanding that speedy trial considerations did not attach when a defendant was incarcerated.

The prosecutor also mentioned a

focus on a Mr. Hockett, who escaped with the defendant. No reason was given as to why such a focus should delay the defendant's case. He would not appear to be a necessary witness against the defendant, and he is not listed as a witness in the state's discovery.

The prosecutor testified that no attempt was made to obtain from Judge Robert M. Daniel, the former judge of this court, an order like that which was granted forthwith, upon the prosecutor's request on April 4, 1985, directing that the sheriff proceed to the Mansfield Reformatory and return the defendant for arraignment on April 11, 1985. No reason was given as to why no such attempt was made.

No improper motive such as a desire to hamper the defense appears as a reason for the delay, but no valid reason appears either.

The consideration of the prosecuting attorney's misunderstanding as to the law as a reason for the delay tips the balance, not heavily, but still significantly, toward a determination that the defendant's speedy trial rights have been denied.

### Defendant's Assertion of His Right

Although a defendant's failure to assert his right to a speedy trial may tip the balance toward a determination that he was not deprived of the right, a defendant, who is unrepresented by counsel and does not know his right, may be excused from having to assert it. *United States* v. *Dyson* (C.A. 5, 1972), 469 F.2d 735.

The court finds that the defendant was unrepresented both in this case and in case No. CR-83-10 until his arraignment on April 11, 1985, and further that he is not an "experienced" criminal defendant who can be said to be aware of his rights.

Although the defendant did not prior to the motion filed by his counsel on May 15, 1985 assert his right to a speedy trial as such, the court finds that he did make objection to the pendency of the indictment in a letter he wrote to the prosecuting attorney requesting that it be dismissed.

Given the defendant's lack of counsel, his failure to assert his right does not tip the balance toward a determination that he was afforded the right to a speedy trial.

### Prejudice to the Defendant in Connection with His Defense

The defendant asserts that his defense was hampered as a result of the failure to bring him to trial earlier, contending that his ability to locate certain witnesses has been significantly reduced. The prosecution focuses on statements it contends the defendant made including both written statements he made before he was delivered to the reformatory in connection with the earlier case and a verbal statement concerning his alleged escape made to a grand juror who was viewing the jail while the defendant awaited trial there in this case and suggests both that it is clear enough that the defendant committed the offenses alleged and that his own recollection of the events relating to them is not substantially diminished.

The issue in *State* v. *Luck* (1984), 15 Ohio St. 3d 150, was not whether the defendant had been denied her right to a speedy trial as such, as the delay in prosecution was pre-indictment delay, but whether the pre-indictment delay established a due process violation. Nevertheless, the analysis in the case is helpful.

Luck contended that in fifteen years' time witnesses had died, memories had failed, and evidence had been lost. The Ohio Supreme Court first determined that her confession had been obtained in violation of her Sixth Amendment right to counsel and, then, balancing the admissible evidence

against the loss of evidence, determined that the defendant had suffered actual prejudice.

In this case, no motion to suppress the defendant's statements has been filed as of the writing of this decision though the defendant has had counsel for some months now. The court, therefore, treats defendant's statements as admissible for purposes of this speedy trial analysis.

The escape charge would seem to be extremely difficult to defend against and defendant's statements would seem to be decisive. One of the written statements would seem to go far toward establishing the arson charge. Balanced against this, any loss of evidence in the defendant's favor would not appear to be particularly prejudicial.

The court specifically finds that no significant prejudice has occurred to the defendant's defense as a result of the delay. The consideration of the lack of significant prejudice to the defendant's case tips the balance heavily toward a determination that the defendant was not denied his speedy trial right.

## Prejudice to the Defendant Other Than in Connection with the Defense

"At first blush it might appear that a man already in prison under a lawful sentence is hardly in a position to suffer from 'undue and oppressive incarceration prior to trial.' But the fact is that delay in bringing such a person to trial on a pending charge may ultimately result in as much oppression as is suffered by one who is jailed without bail upon an untried charge. *First, the possibility that the defendant already in prison might receive a sentence at least partially concurrent with the one he is serving may be forever lost if trial of the pending charge is postponed. Secondly, under procedures now widely practiced, the duration of his present imprisonment may be increased, and the conditions under which he must serve his*

*sentence greatly worsened, by the pendency of another criminal charge outstanding against him."* (Emphasis added.) *Smith* v. *Hooey* (1969), 393 U.S. 374, 378.

Except with respect to the charge of escape, any sentences imposed in connection with the pending indictment could now be, and could earlier have been, made to run concurrently with the sentences the defendant is now serving. Clearly, however, part of the effect of that possibility has been lost as a result of the delay in bringing the defendant to trial. The court finds the prejudice to be clear.

The defendant testified that he was denied parole and held in prison beyond the time required by his minimum sentence because of charges pending against him.

The evidence adduced at the hearing included defendant's Exhibit II which was material provided to defense counsel by the Adult Parole Authority in response to defendant's subpoena of the authority's records. It is obvious that this rather thin file does not include copies of all communications from and to the authority concerning the defendant's sentence and possible parole. In particular, it does not include copies of certain communications sent to the prosecuting attorney from the Adult Parole Authority and those to the authority from the prosecuting attorney, which communications make up court's Exhibits 1 and 2.

It has been held that a defendant's uncontradicted assertion that he was harmed in regard to consideration for parole is sufficient to establish prejudice. *Ex parte Slaughter* (Ala. 1979), 377 So. 2d. 632.

It appears from defendant's Exhibit II that defendant has had the consideration of the parole either rescheduled or denied at least twice. In light of the fact that the Parole Board obviously had in-

formation (court's Exhibits 1 and 2; letters from the prosecuting attorney) to the effect that there was an indictment pending against the defendant and the inherent improbability that a young offender with no prior prison record would not receive an early parole on burglary and breaking and entering charges, the court considers the defendant's testimony to be reliable and finds that the defendant was in fact prejudiced in connection with the consideration of his possible parole by the delay in bringing him to trial on the pending indictment.

Defendant's counsel contends that defendant was much worried about the pending indictment. This contention is supported by the defendant's testimony and that of the prosecuting attorney that the defendant wrote the prosecutor a letter requesting that the indictment be dismissed.

"And while it might be argued that a person already in prison should be less likely than others to be affected by 'anxiety and concern accompanying public accusation,' there is reason to believe that an outstanding untried charge (of which even a convict may, of course, be innocent) can have fully as depressive an effect upon a prisoner as upon a person who is at large. Cf. *Klopfer* v. *North Carolina* [(1967), 386 U.S. 213 (41 O.O.2d 168)], *supra*, at 221-222. In the opinion of the former Director of the Federal Bureau of Prisons.

" '[I]t is in their effect upon the prisoner and our attempts to rehabilitate him that detainers are most corrosive. The strain of having to serve a sentence with the uncertain prospect of being taken into the custody of another state at the conclusion interferes with the prisoner's ability to take maximum advantage of his institutional opportunities. His anxiety and depression may leave him with little inclination toward self-improvement.' " *Smith* v. *Hooey, supra*, at 379.

The natural anxiety that must have existed could well have been exacerbated by mental difficulties, of which there was some hint in the evidence. The court finds that the defendant did suffer from some significant anxiety as a result of the delay in bringing him to trial.

The consideration of prejudice to the defendant other than in connection with his defense tips the balance quite heavily toward a determination that defendant has been denied his speedy trial right.

In combining together the factors discussed, and balancing them against each other, the court concludes that the defendant has been denied his right to a speedy trial guaranteed by the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution and is thereby entitled to a dismissal. The delay has been inordinate, without valid reason, and prejudicial to the defendant. His failure to demand a speedier proceeding does not weigh against his present claim given his earlier lack of counsel.

*Complaint dismissed.*