**UNITED STATES of America, Appellant,**

v.

**Thomas Michael GOLON, Defendant-Appellee.**

**No. 74–1299.**

United States Court of Appeals, First Circuit.

Argued Dec. 4, 1974.

Decided Jan. 28, 1975.

Certiorari Denied May 27, 1975.

See 95 S.Ct. 1999.

---

Robert B. Collings, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., and Benjamin Jones, Asst. U. S. Atty., were on brief, for appellant.

Norman S. Zalkind, Boston, Mass., with whom Eric D. Blumenson and Zalkind & Zalkind, Boston, Mass., were on brief, for defendant-appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

The facts of this case as found by the district court, United States v. Golon, 378 F.Supp. 516 (D.Mass.1974), are undisputed. Appellee Thomas Michael Golon was classified as a conscientious objector by his draft board in 1970, and was ordered to perform 24 months of alternate service in civilian work contributing to the national health, safety or interest. Appellee began work in late 1970 at the Metropolitan State Hospital in Waltham, Massachusetts, but continued his employment there only until April 4, 1971. The State Selective Service Headquarters wrote appellee on April 19 concerning this unauthorized termination of his employment, and appellee responded with a request for reassignment. The state headquarters sent two additional letters inquiring about appellee's prospective civilian employment, but received no response to these. In July, 1971, appellee started a non-profit food store, relying, according to his testimony, on conversations with a Selective Service official and others which indicated that it might be possible to fulfill his service obligation in this way.

On August 23, 1972, the State Selective Service Board assigned appellee to work at Massachusetts General Hospital to complete his obligation, but he did not

report. The State Selective Service Headquarters was notified on October 5 of the failure to report, and informed the United States Attorney of the alleged violation the next day. After having the FBI interview appellee, the U.S. Attorney's office requested copies of relevant Selective Service documents on July 21, 1973. These documents were received in October, reviewed by an Assistant U. S. Attorney on December 10, and an indictment was obtained December 19 for failure to perform the alternate service. 50 U.S.C. Appendix §§ 456(j), 462. Appellee was arraigned on January 7, 1974, and pleaded not guilty. After a hearing, the district court dismissed the indictment on July 30 on the ground that the government's prosecution of the case had not been conducted as expeditiously as mandated by 50 U.S.C. Appendix § 462(c) and that appellee had been prejudiced thereby.

Section 462(c), which was enacted as part of the Military Selective Service Act of 1967, provides:

"The Department of Justice shall proceed as expeditiously as possible with a prosecution under this section, or with an appeal, upon the request of the Director of Selective Service System or shall advise the House of Representatives and the Senate in writing the reasons for its failure to do so."

The determination whether the "expeditiously as possible" requirement of the statute was brought into play in this case by a sufficient "request" by the Director of Selective Service requires reference to the letter sent to the U.S. Attorney by the State Selective Service Headquarters on October 6, 1972. Since appellee has pointed to no other letter or communication from Selective Service making the request required by § 462(c), this letter must be viewed as constituting whatever request was made. The letter was one reporting appellee for prosecution as a violator:

"This headquarters, having carefully reviewed the entire file folder of the subject registrant and finding no procedural errors, and having processed

him under the provisions of section 1660.9 of the regulations herewith reports the subject for prosecution under Section 12 of the Military Selective Service Act for violation of the provisions of section 6(j) of that act . . .."

Appellee argues that this was the request for expeditious prosecution contemplated by the statute, while the government contends that a more specific invocation of § 462(c) by a special request from the Director is necessary to bring it into operation. Before proceeding to the merits of this issue, we shall deal with two preliminary points raised by appellee.

■ It is argued, first of all, that by failing to present to the district court the argument that there was no "request" the government has foreclosed that line of attack here. Incontestably, it would have been better and more fair to the district court to have enabled it to pass upon the issue directly, and sound policies often dictate that we refuse to consider issues raised in the first instance on appeal. Here, however, we think it inappropriate to halt at the threshold. In briefing the Motion to Dismiss below, neither party focused on the § 462(c) argument among the multiplicity of issues mentioned in the motion. The district court first denied the motion, United States v. Golon, 378 F.Supp. 513 (D.Mass.1974); this was done without discussion of the specific issues raised by appellee with regard to delay (due process, Sixth Amendment speedy trial, § 462(c)). After this initial disposition, the district court held a hearing on the matter, and dismissal was granted. The issue relating to the nature of the request required by § 462(c) was not discussed either in memoranda or at the hearing, which was limited to appellee's testimony as to his conduct. We would be inclined to view this somewhat disorganized presentation of the issues to the district court as sufficient in itself to justify our consideration of the "request" issue. In addition, there are more salient factors which also support that re-

sult. The issue is one which is presented on the face of the statute, which specifically requires a request. And we are loath to pass over a question, squarely before us, which is almost certain to be presented in identical terms in other cases.[1]

█ Appellee contends, secondly, that the district court's determination that § 462(c) was applicable is one of fact which cannot be overturned unless clearly erroneous, likening it to a finding of consent. We disagree. The issue is strictly a legal one, posing the question whether § 462(c) comes into play in every case where a state board reports a registrant for prosecution or is triggered only by a specific request from the national Director of Selective Service.

█ The parties put forward radically different conceptions of the "request" referred to in § 462(c). Appellee contends that Congress intended that the prosecution of all draft cases be speeded up, and that in reporting an alleged violator for prosecution the Selective Service System fulfills the requirements of the statute. This position draws support from statements such as that by the House Armed Services Committee that enactment of the provision would "create a sense of urgency in the Department of Justice in respect to violations of the Selective Service Act." House Report No. 267, 90th Cong., 1st Sess., 1967 U.S.Code Cong. & Admin.News at p. 1333. The section was described in the House Report as a response to "the apparent failure of the Attorney General to prosecute many alleged violations of the Selective Service Act despite the requests of the Director of Selective Service." *Id.* The government agrees, as it must, that Congress sought to give the Director greater control over the prosecution of alleged draft violators, but it argues that an across-the-board command that all alleged violators be speedily prosecuted was not the mechanism chosen. It argues that Congress was aware that all draft cases are referred to

the Justice Department by the Selective Service System, and that therefore an interpretation which labels the initial referral a § 462(c) request has the effect of rendering the request requirement surplusage. All the provisions of the statute may be given effect, it is argued, if the section is interpreted as creating a two-stage procedure. After the referral or report, the U.S. Attorney investigates and decides whether to seek an indictment. If the Director of Selective Service is displeased with the handling of a particular matter, he may make a specific request for expeditious prosecution and thereby bring the section into play. The legislative history which most strongly supports this interpretation is found in the House Committee's section-by-section analysis of the bill:

"The provisions . . . would require the Department of Justice to institute as expeditiously as possible prosecution and judicial proceedings of violations of the Draft Act *in instances in which a specific request for such action has been made* by the Director of Selective Service or in the absence of such prosecution by the Attorney General, a complete report in writing to the House of Representatives and the Senate." House Report No. 267, U.S.Code Cong. & Admin.News, 1967, at p. 1349. [Emphasis supplied.]

After carefully considering the language of § 462(c) and the policies underlying it as reflected in the legislative history of the 1967 Act, we have concluded that the section must be read to require a specific request beyond the standard referral for prosecution. Congress was well aware of the role of the Selective Service System as the originator of draft-violation investigations by U.S. Attorneys, and thus would have realized that considering the original violation report a "request" would have the effect of bringing all draft cases within § 462(c). Although foggy in some respects, the language of the section, the reports, and the commentary in the Sen-

1. We are advised that a number of cases involving the interpretation of § 462(c) have been decided or are now pending in the District of Massachusetts.

ate and House make such prominent reference to the "request" requirement that the argument that § 462(c) applies to all alleged violations is seriously undermined.

There is no question but that Congress felt that draft cases should in general be more vigorously pursued. It took two steps to accomplish this purpose. Section 462(a) had given priority to prosecution of draft cases on court dockets where requested by the Attorney General. By deleting the prerequisite of such a request, Congress elevated all draft cases, after indictment, to a position of priority. And in § 462(c), it gave added authority to the Director to call for prosecution where he might feel there was untoward reluctance to seek indictment by the Justice Department. But there is no substantial support for the conclusion that Congress intended to strip away entirely the prosecutorial discretion reposed in the Justice Department and insist that an indictment be sought in every referred case, no matter what the result of the investigation of the case. It is true that even under § 462(c) final authority rests with the Justice Department, which may choose to report to Congress on its reasons for not prosecuting if that is its decision. But this fact is but another indication that the section is a remedy which must be specially invoked by the Director of Selective Service.[2] In 1971, the U.S. Attorney for Massachusetts presented 84 referred cases to a grand jury, and declined prosecution on 220; in 1972, 99 were presented and 189 declined; and in 1973, 80 were presented and 236 declined. We cannot accept the suggestion that Congress anticipated or intended that a full report be made to the Senate and House of Representatives in each of the "declined" cases. Not only would such an interpretation indicate a massive and sustained violation of § 462(c) by the U.S. Attorney, but the apparent failure of Congress to respond to this flagrant nonfiling of explanatory letters would be inexplicable.

As our discussion above indicates, we believe that Congress intended to enhance the influence of the Director of Selective Service in prosecution matters by giving him the power to spotlight individual cases of possible Justice Department abuse, not by requiring the Department to prosecute all cases referred or explain its failure to do so. In addition to the House Report, cited above, and the Conference Report, 1967 U.S.Code Cong. & Admin.News at p. 1361, the amendment of § 462(a) in the 1967 Act defeats any suggestion that the imposition of the "request" requirement was inadvertent or viewed as inconsequential. Before 1967, as noted above, subsection (a) directed that courts advance draft cases for immediate hearing upon the request of the Attorney General. The 1967 amendment eliminated the requirement of a request and provided for the advancement of all selective service cases. The considered elimination of a request requirement from subsection (a) of § 462 is not easily reconciled with an interpretation of subsection (c) which has the effect of making meaningless another request provision inserted at the same session.

We have carefully examined the two published cases of which we are aware which shed any light on § 462(c). Appellee relies heavily upon United States v. Daneals, 370 F.Supp. 1289 (W.D.N.Y. 1974), in which a district court dismissed a number of indictments for selective service violations for reasons including what it found to be the failure of the government to comply with § 462(c). That court did measure delay for purposes of the statute from the time the cases were referred to the U.S. Attorney, but the underlying decision that the referrals constituted adequate requests for expeditious prosecution is only an implic-

---

2. Because of our resolution of the other issues, we need not decide whether a specific request made by the State Selective Service Headquarters is that of the Director of Selective Service for purposes of § 462(c).

it one. It is unarticulated and unexplained, and therefore offers no persuasive authority for the position argued for by appellee. Moreover, *Daneals* involved a number of grand jury abuses, and these figured in the district court's decision to dismiss. And the court refused to dismiss the indictments with prejudice, leaving open the question "whether or not the failure of the government to proceed expeditiously in these cases was serious enough to prevent any indictment in particular cases." 370 F.Supp. at 1301.

The other case relied upon by appellee, United States v. Dyson, 469 F.2d 735 (5th Cir. 1972), is of no more assistance to him. The case does not discuss any of the issues directly relevant here—it deals with post-indictment delay in applying § 462(a), and § 462(c) is mentioned but not explained or applied.

Since we have determined that the mandate of § 462(c) does not apply to this case due to the lack of an adequate request by the Director of Selective Service, we need not decide whether the section, when applicable, inures to the benefit of a defendant and justifies dismissal of the indictment when a prosecutor has failed to comply. Nor need we consider whether the statute requires greater expedition than that guaranteed by the Sixth Amendment or whether delay in selective services cases subject to the statute is measured from referral to the U.S. Attorney.

Although there was a delay of 32 months in this case between the alleged violation and indictment, and 14 months between referral to the U.S. Attorney and indictment, appellee has demonstrated no violation of his Sixth Amendment right to a speedy trial. Delay is measured for purposes of the Sixth Amendment from the time one is accused of a crime, United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), and appellee became an "accused" when indicted on December 19, 1973. There has been no claim of unconstitutional delay since that time.

Reversed.