UNITED STATES of America, Appellee,

v.

Julio LA GUARDIA,
Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

Eredia Josefa JIMENEZ–MINALLA,
Defendant, Appellant.

Nos. 89–1620, 89–1655.

United States Court of Appeals,
First Circuit.

April 25, 1990.

Frank D. Inserni, Hato Rey, P.R., for defendant, appellant Julio LaGuardia.

Ramon Garcia Garcia, Santurce, P.R., on brief, for defendant, appellant Eredia Josefa Jimenez–Minalla.

Antonio R. Bazan, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., was on brief, for U.S.

Before TORRUELLA and SELYA, Circuit Judges, and RE,* Judge.

SELYA, Circuit Judge.

This appeal involves the constitutionality of 18 U.S.C. § 3553(e) (1988) and section 5K1.1 of the federal sentencing guidelines.[1] We hold that the contested provisions, while perhaps of dubious merit, do not deprive defendants of any constitutional entitlement.

---

* The Honorable Edward D. Re, Chief Judge of the United States Court of International Trade, sitting by designation.

## I. BACKGROUND

In mid–1988, a 5–count indictment was returned by a federal grand jury in Puerto Rico against appellants Julio LaGuardia, Eredia Josefa Jimenez–Minalla (Jimenez), and a third codefendant with regard to the importation of nearly 200 kilograms of cocaine. The defendants were charged with violating 21 U.S.C. §§ 843(b), 846, and § 959(a)(1), and with aiding and abetting, 18 U.S.C. § 2. Several weeks later, the same trio was arrested in Florida with an even larger shipment of cocaine. This misadventure led to federal charges in the Southern District of Florida.

Appellants pled guilty in the Florida case. After being sentenced there to identical 18–year terms of imprisonment (plus supervised release), they pled guilty to conspiracy in the Puerto Rico case in return for the government's agreement to seek dismissal of the remaining charges and to ask the court to impose sentences concurrent with those previously imposed in Florida.

The United States District Court for the District of Puerto Rico obliged in some measure. The court dismissed all of the indictment except for count 1. On that count, the court meted out sentences concurrent with the earlier sentences. But, there was a rub. Using a guideline calculation which appellants do not contest on appeal, the court found each appellant to be a career offender subject to a sentence ranging between 30 years and life imprisonment. The court sentenced defendants at the nadir of the applicable guideline range, 30 years apiece. The government did not ask for, and the court did not volunteer, a downward departure. These appeals followed.

## II. THE ISSUE

These are rifle-shot appeals, aimed at specific provisions of the Sentencing Re-

---

1. All references to the guidelines are to the text in effect when these defendants were sentenced. *See* 18 U.S.C. § 3553(a)(4) (1988).

form Act (Reform Act) and the guidelines.[2] Both the statute, 18 U.S.C. § 3553(e), and the guidelines, U.S.S.G. § 5K1.1, provide in substance that where a defendant has furnished substantial assistance in the investigation or prosecution of another criminal, the sentencing court may make a downward departure "[u]pon motion of the government." Appellants contend that they rendered such substantial assistance to the United States, but to no avail; the government stubbornly eschewed the filing of any motion. In appellants' view, the challenged provisions give too large a stick to the prosecutor, infracting defendants' due process rights in several ways, e.g., by impermissibly shackling the sentencing court's discretion, by unlawfully restricting the information which the sentencing court can consider, and by unfairly limiting defendants' ability to influence sentencing judgments.

## III. APPELLATE JURISDICTION

■ Despite the fact "that a criminal defendant cannot normally ground an appeal" on the sentencing court's discretionary decision not to essay a downward departure from the sentencing guidelines, *United States v. Jimenez–Otero*, 898 F.2d 813, 815 (1st Cir.1990); *see also United States v. Pighetti*, 898 F.2d 3, 4 (1st Cir. 1990); *United States v. Tucker*, 892 F.2d 8, 10 (1st Cir.1989), we believe we have jurisdiction to determine the instant appeals. When, as here, defendants challenge not the judge's exercise of discretion but the constitutionality of the scheme under which they were sentenced, their appeals are properly before us under 18 U.S.C. § 3742(a)(1) (defendant may appeal sentence "imposed in violation of law"). *See United States v. Tholl*, 895 F.2d 1178, 1180 n. 2 (7th Cir.1990) (court of appeals has jurisdiction over constitutional challenge to guidelines under § 3742(a)(1)); *see also United States v. Colon*, 884 F.2d 1550, 1553 (2d Cir.) ("only sensible view of § 3742(a)(1) is that it was largely intended to ensure that the appellate review previously available for claims that a sentence was in excess of the statutory maximum, was based on impermissible considerations, or was the result of some other demonstrable error of law ... would be retained"), *cert. denied,* — U.S. —, 110 S.Ct. 553, 107 L.Ed.2d 550 (1989); *cf. United States v. Tucker*, 404 U.S. 443, 448, 92 S.Ct. 589, 592, 30 L.Ed.2d 592 (1982) (even before Reform Act liberalized right to appeal from sentencing decisions, defendant could appeal if sentencing court relied on improper, inaccurate information).

## IV. PROCEDURAL DEFAULT

■ Appellate jurisdiction being assured, another obstacle lurks at the threshold. In the district court, appellants neither attacked the government's failure to move for a downward departure nor flew the banner of constitutional breach which they hoist before us. Ordinarily, such an omission would be fatal; our usual praxis is to ignore on appeal issues which were

---

**2.** The challenged statute reads in pertinent part:

*Upon motion of the Government,* the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

18 U.S.C. § 3553(e) (emphasis supplied). In respect to this provision, we note that Congress, as part of the Reform Act, directed the Sentencing Commission to "assure that the guidelines reflect the general appropriateness of imposing a lower sentence than would otherwise be imposed, including a sentence that is lower than that established by statute as a minimum sentence, to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." 28 U.S.C. § 994(n) (Supp. V 1987). The Sentencing Commission thereupon formulated the challenged guideline:

*Upon motion of the government* stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

U.S.S.G. § 5K1.1 (policy statement) (emphasis supplied). The guidelines go on to suggest criteria for determining the appropriateness and extent of any downward departure. *Id.* § 5K1.1(a)(1)–(5).

not seasonably raised below. *See, e.g., United States v. Figueroa*, 818 F.2d 1020, 1025 (1st Cir.1987); *United States v. Argentine*, 814 F.2d 783, 791 (1st Cir.1987); *Nogueira v. United States*, 683 F.2d 576, 580 (1st Cir.1982). Yet, the exception sometimes proves the rule: an appellate court has discretion, in an exceptional case, to reach virgin issues. *See Singleton v. Wulff*, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *United States v. One Urban Lot, Etc.*, 885 F.2d 994, 1001 (1st Cir.1989); *United States v. Doe*, 878 F.2d 1546, 1554 (1st Cir.1989); *United States v. Krynicki*, 689 F.2d 289, 291 (1st Cir.1982). While that power should be exercised sparingly, it may appropriately be invoked in this instance.

We need not paint the lily. In *Krynicki*, we catalogued the criteria which made a situation so exceptional as to encourage an appellate tribunal to relax the raise-or-waive rule. *See id.* at 291–92. These appeals fit the mold rather well: the new issue is strictly a question of law; it is "almost certain to be presented in identical terms in other cases," *United States v. Golon*, 511 F.2d 298, 301 (1st Cir.), *cert. denied*, 421 U.S. 992, 95 S.Ct. 1999, 44 L.Ed.2d 483 (1975); [3] and if the defendants' constitutional claim has merit, it would be a rank miscarriage of justice to allow their sentences to stand. Furthermore, the point can be resolved with certitude on the existing record, a factor that often inclines a court to entertain a pivotal argument for the first time on appeal. *See Singleton*, 428 U.S. at 121, 96 S.Ct. at 2877; *cf. United States v. Parrilla Bonilla*, 648 F.2d 1373, 1386 (1st Cir.1981) (refusing to consider new argument on appeal where correct resolution doubtful).

When all is said and done, "[r]ules of practice and procedure are devised to promote the ends of justice, not to defeat them." *Hormel v. Helvering*, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941). Because appellants' challenge to the statutory scheme and the guidelines raises an issue of constitutional magnitude which, if meritorious, could substantially affect these, and future, defendants, we believe we should address their arguments despite the fact that they were not made below. *Accord United States v. Justice*, 877 F.2d 664 (8th Cir.) (reaching and discussing identical issue notwithstanding defendant's failure seasonably to assert constitutional challenge), *cert. denied*, ─── U.S. ───, 110 S.Ct. 375, 107 L.Ed.2d 360 (1989).

## V. THE CONSTITUTIONAL CLAIM

Turning to the thrust of the argument on appeal, we consider whether the challenged statute and/or guideline abridged defendants' constitutional rights. To be sure, the contested provisions inhibit a judge's discretion to impose a sentence below the guideline minimum on grounds of the defendant's cooperation, limiting such downward departures to cases in which the government takes the initiative.[4] Appellants claim that this restriction transgresses due process, principally by "eliminat[ing] or interfer[ing] with the sentencing court's right to [employ] judicial discretion in individualized sentencing." Appellant's Brief in No. 89–1620, at p. 1. We disagree.

### A

■ It is by now apodictic that the sentencing guidelines effectively stunt the wide discretion which district judges formerly enjoyed in criminal sentencing. *See United States v. Aguilar–Pena*, 887 F.2d 347, 353 (1st Cir.1989) ("Times have

---

3. Indeed, we have learned that the same issue was argued to, and is presently under advisement before, another panel of this court. *See United States v. Havener*, No. 89–1484 (argued Feb. 8, 1990).

4. We note that, even absent a prosecution motion, the court is free to consider evidence of a defendant's substantial assistance in determining what sentence *within* the guideline range should be imposed. *See United States v. Ala-*

---

*min*, 895 F.2d 1335 (11th Cir.1990); *United States v. Bruno*, 897 F.2d 691 (3d Cir.1990). Because the court below sentenced appellants at the lowest end of the applicable guideline range, however, we need address only the issue of whether a downward departure for substantial assistance may constitutionally be restricted to those cases where the government initiates the process.

changed. Under existing law, district courts, in passing sentence, no longer write on a blank page, circumscribed only by the statutory limits appertaining to the offense of conviction."); *see also United States v. Allen*, 873 F.2d 963, 966 (6th Cir.1989); *United States v. Seluk*, 873 F.2d 15, 17 (1st Cir.1989) (per curiam); *United States v. Vizcaino*, 870 F.2d 52, 54 (2d Cir.1989); *United States v. Frank*, 864 F.2d 992, 1008 (3d Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 2442, 104 L.Ed.2d 998 (1989). Uniformity in sentencing was undeniably a primary goal of Congress and the Sentencing Commission in establishing a neoteric sentencing framework. *See* 28 U.S.C. § 991(b)(1)(B) (Supp. V 1987); U.S.S.G. Ch. 1, Part A, Introduction 3; *see also United States v. Aguilar–Pena*, 887 F.2d at 352; *United States v. Seluk*, 873 F.2d at 17; *United States v. Vizcaino*, 870 F.2d at 53–54. Thus, it is no exaggeration to say that the guidelines were conceived and developed to avoid what many had perceived as a cardinal unfairness of the criminal justice system: the imposition of dramatically disparate sentences by different judges for like crimes committed in like circumstances. *See* S.Rep. No. 225, 98th Cong., 2d Sess. 38, 65, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3221; *see also* 18 U.S.C. § 3553(a)(6) (1988); *United States v. Aguilar–Pena*, 887 F.2d at 352.

That the discretionary limits reflected by the guidelines are intended to safeguard defendants from arbitrary sentencing procedures, *see Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 651, 102 L.Ed.2d 714 (1989), in itself betokens no constitutional malaise. Because judges are human beings, not computerized robots, added restrictions on the formulation of sentences seem a necessary corollary to the quest for eliminating disparity and achieving a closer approximation of uniformity. As we have recently stated, "[t]he strong

hope is that rather than offend due process, the guidelines—properly administered—will greatly advance the fairness of criminal sentencing." *United States v. Seluk*, 873 F.2d at 17.

Merely because Congress was cognizant of the restrictions it placed upon the judiciary and intended, in doing so, to reduce the uncertainties inherent in the sentencing process, does not end our inquiry—but it hastens the climax. "[T]he Supreme Court has never held that a defendant in a noncapital case has a due process right to an individualized sentence." *Id.* at 16. The opposite is true: "in noncapital cases, the established practice of individualized sentences rests not on constitutional commands, but on public policy enacted into statutes." *Lockett v. Ohio*, 438 U.S. 586, 604–05, 98 S.Ct. 2954, 2964–65, 57 L.Ed.2d 973 (1978). Accordingly, Congress has the power to cabin judicial sentencing discretion, or even to eliminate discretion entirely, by fixing precise rather than indeterminate sentences. *See, e.g., McMillan v. Pennsylvania*, 477 U.S. 79, 89–90, 106 S.Ct. 2411, 2417–18, 91 L.Ed.2d 67 (1986); *United States v. Grayson*, 438 U.S. 41, 45–46, 98 S.Ct. 2610, 2613, 57 L.Ed.2d 582 (1978); *Ex parte United States*, 242 U.S. 27, 42, 37 S.Ct. 72, 74, 61 L.Ed. 129 (1916).[5] In short, "the scope of judicial discretion with respect to a sentence is subject to congressional control." *Mistretta v. United States*, 109 S.Ct. at 650.

Inasmuch as Congress possesses power to determine the degree to which discretion in sentencing exists at all, it could validly employ that power to enact enabling legislation spawning the sentencing guidelines. *See United States v. White*, 869 F.2d 822, 825 (5th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989). The use of guideline sentencing, then, does not deprive a defendant of his constitutional right to due process. *United States v.*

---

**5.** Given this backdrop, it is unsurprising that courts of appeals have consistently rejected claims that mandatory prison terms delineated by Congress violate the Due Process Clause because they constrict the sentencing judge's discretion. *See, e.g., United States v. Goodface*, 835 F.2d 1233, 1236–37 (8th Cir.1987); *United States*

*v. Van Horn*, 798 F.2d 1166, 1167–68 (8th Cir. 1986); *United States v. Bridgeman*, 523 F.2d 1099, 1121 (D.C.Cir.1975), *cert. denied*, 425 U.S. 961, 96 S.Ct. 1744, 48 L.Ed.2d 206 (1976); *Smith v. United States*, 284 F.2d 789, 791 (5th Cir. 1960).

*Lewis*, 896 F.2d 246, 249 (7th Cir.1990); *United States v. Pinto*, 875 F.2d 143, 144–46 (7th Cir.1989); *United States v. Allen*, 873 F.2d at 966; *United States v. Seluk*, 873 F.2d at 17; *United States v. Brittman*, 872 F.2d 827, 828 (8th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 184, 107 L.Ed.2d 140 (1989); *United States v. Vizcaino*, 870 F.2d at 56; *United States v. White*, 869 F.2d at 825; *United States v. Frank*, 864 F.2d at 1010.

Congress' power to control judicial sentencing discretion includes the power to specify the factors a court may consider in setting a sentence. *See United States v. Lewis*, 896 F.2d at 249; *United States v. Huerta*, 878 F.2d 89, 93 (2d Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 845, 107 L.Ed.2d 839 (1990). Congress could, for example, have chosen to ignore an accused's cooperation entirely. It follows inexorably that, since defendants have no right to a departure from the guidelines based on their cooperation with the government, they "have no grounds upon which to challenge Congress' manner of enacting [such a departure provision]." *United States v. Musser*, 856 F.2d 1484, 1487 (11th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 1145, 103 L.Ed.2d 205 (1989); *accord United States v. Lewis*, 896 F.2d at 249; *United States v. Francois*, 889 F.2d 1341, 1344 (4th Cir.1989).

It is equally well settled that Congress delegated this "factor-specifying" power to the Sentencing Commission in a constitutionally inoffensive manner. *See Mistretta v. United States*, 109 S.Ct. at 658. The Commission was therefore free to determine the extent to which substantial assistance should be an element warranting departure, and to fashion an implementing methodology, consistent with the hortatory imperative of 18 U.S.C. § 3553(e). The Commission carried out this assignment punctiliously. Whether or not the ensuing guideline is wise is not for us to say. *Cf. Irons v. FBI*, 811 F.2d 681, 689 (1st Cir. 1987) ("The legislative branch has made its policy choices and the courts must honor them."). What counts is that defendants had no constitutional right to *any* "substantial assistance" departure provision in

the guidelines beyond that mandated by the statute—so they cannot rewardingly complain about the provision which emerged. *See United States v. Lewis*, 896 F.2d at 249; *United States v. Francois*, 889 F.2d at 1344; *United States v. Huerta*, 878 F.2d at 93; *United States v. Ayarza*, 874 F.2d 647, 653 (9th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 847, 107 L.Ed.2d 841 (1990); *see also United States v. Coleman*, 895 F.2d 501, 504–05 (8th Cir. 1990) (upholding 18 U.S.C. § 3553(e) against analogous constitutional challenge); *United States v. Musser*, 856 F.2d at 1487 (same). In this context, as so often is true elsewhere in life, half a loaf is better than none.

### B

■ Appellants also contend that section 5K1.1 violates due process because it restricts the information available to the court at sentencing, letting the prosecutor call the turn as to whether the judge will learn of the accused's cooperation. There are, we suggest, several flaws in this proposition.

In the first place, sentencing is neither inherently nor irreducibly a judicial function. Rather, sentencing "long has been a peculiarly shared responsibility among the Branches of government and has never been thought of as the exclusive constitutional province of any one Branch." *Mistretta v. United States*, 109 S.Ct. at 664. The prosecutor has traditionally exercised a certain degree of control over a defendant's ultimate sentence by determining what charges to bring or, indeed, whether to prefer charges at all. *See United States v. Huerta*, 878 F.2d at 92. The government motion requirement contained in 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 recognizes these realities and adds to them "the reasonable assumption that the government is in the best position to supply the court with an accurate report of the extent and effectiveness of the defendant's assistance." *United States v. White*, 869 F.2d at 829; *accord United States v. Lewis*, 896 F.2d at 249; *United States v.*

*Francois,* 889 F.2d at 1344; *United States v. Ayarza,* 874 F.2d at 653.

In the second place, the government has a strong interest in encouraging defendants to cooperate. Responsible use of substantial assistance motions will doubtless promote such cooperation. *See United States v. Huerta,* 878 F.2d at 93. Conversely, a government which is overly grudging in moving for departures to reward valuable cooperation will likely discover a drying up of its sources of information. Consequently, there is little incentive for the prosecution to misuse the power to file, or withhold, a section 5K1.1 motion. And what is more, a defendant has the right to reserve his assistance unless the government, by plea agreement, commits to seeking a downward departure. (No such condition was contained in the plea contracts entered into by LaGuardia and Jimenez.)

Finally, it is too much of a stretch to assert either that the sentencing scheme leaves the court out in the cold or that the judiciary's access to data concerning the existence and extent of an accused's cooperation is left to the government's whim. As to the former, the judge's continuing involvement in the sentencing process is manifest; although the prosecutor has discretion to move the court for a reduced sentence, the authority to shape the sentence within legislatively structured confines, whether or not a motion is made, remains vested in the district court. *See United States v. Musser,* 856 F.2d at 1487. Nor do we visualize section 5K1.1 as stanching the flow of relevant information to the sentencing court. We explain briefly.

Section 5K1.1 notwithstanding, the judge "has a right to expect that the prosecutor and the probation department ... give him all relevant facts within their ken" which pertain to the sentencing decision. *United States v. Hogan,* 862 F.2d 386, 389 (1st Cir.1988). Whether or not the government moves for a downward departure, the presider can insist on being fully briefed as to the extent of a defendant's assistance. *See* 18 U.S.C. § 3661 (1988) ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); U.S.S.G. § 1B1.4 ("In determining the sentence to impose within the guideline range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law."); *see also* Fed.R.Crim.P. 32(c)(2)(A), (B) (describing in part contents of presentence investigation report). Courts have consentiently held the government to a duty of disclosing all pertinent factual information in its possession at or before the time of sentencing. *See, e.g., United States v. Block,* 660 F.2d 1086, 1091–92 (5th Cir.1981), *cert. denied,* 456 U.S. 907, 102 S.Ct. 1753, 72 L.Ed.2d 164 (1982); *United States v. Garcia,* 544 F.2d 681, 685 n. 2 (3d Cir.1976); *United States v. Voccola,* 600 F.Supp. 1534, 1538 (D.R.I.1985).

It is beyond cavil that the duty of disclosure extends to information anent a defendant's cooperation. *See United States v. Bruno,* 897 F.2d 691, 693 (3d Cir.1990); *United States v. Huerta,* 878 F.2d at 93; *cf. United States v. Newsome,* 894 F.2d 852, 857 (6th Cir.1990). Should the government balk, the district court has ample power, with or without a request by the defendant, to demand that the information be assembled and produced. *See* Fed.R.Crim.P. 32(c)(2)(F) (presentence investigation report shall include "such other information as may be required by the court"); *see also United States v. Galan,* 1989 WL 63110 (S.D.N.Y. June 8, 1989) (where government did not move for downward departure, court nevertheless directed prosecutor to make *in camera* disclosure as to defendant's cooperation). Moreover, nothing in the guidelines prevents the accused from calling the nature and extent of his assistance to the court's attention. Thus, the challenged provisions do not materially impede the sentencing court's access to relevant facts.

## C

The other arguments which appellants mount are either subsets of the foregoing or so plainly meritless as not to require discussion. Finding, as we do, that the whole of appellants' asseverational array is unavailing, we join our sister circuits in concluding that the government motion requirement contained in both 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1 does not transgress the Due Process Clause. *See United States v. Lewis*, 896 F.2d at 249 (§ 3553(e) and § 5K1.1); *United States v. Francois*, 889 F.2d at 1344–45 (§ 5K1.1); *United States v. Grant*, 886 F.2d 1513, 1513–14 (8th Cir.1989) (§ 5K1.1); *United States v. Huerta*, 878 F.2d at 93–94 (§ 3553(e)); *United States v. Ayarza*, 874 F.2d at 653 (§ 3553(e) and § 5K1.1); *United States v. Musser*, 856 F.2d at 1487 (§ 3553(e)); *but see United States v. Curran*, 724 F.Supp. 1239, 1245 (C.D.Ill.1989).

## VI. OTHER AVENUES OF REDRESS

■ Although we conclude that the challenged provisions are not constitutionally infirm, we are not unsympathetic with the criticism that has been levied against them. *See, e.g., United States v. Justice*, 877 F.2d at 667; *United States v. Galan*, 1989 WL 63110 at screen 5. We find especially troubling the government's bland assumption that, under the guidelines, the prosecutor not only has the discretion to decide whether to lodge a motion in a particular instance, but that this discretion is altogether unreviewable. Perhaps in an egregious case—a case where the prosecution stubbornly refuses to file a motion despite overwhelming evidence that the accused's as-

sistance has been so substantial as to cry out for meaningful relief—the court would be justified in taking some corrective action. *See generally United States v. Justice*, 877 F.2d at 668–69 ("in an appropriate case the district court may be empowered to grant a departure notwithstanding the government's refusal to move the sentencing court").[6] But, we need not reach this vexing issue today. The present appellants paint no such compelling picture.

Section 5K1.1(a), while making clear that the enumeration is not all-inclusive, lists the factors which will most frequently shed light upon whether an accused's contribution warrants departure (and if so, the extent thereof):

(1) the court's evaluation of the significance and usefulness of the defendant's assistance,

taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a).

In this case, appellants' claim of substantial assistance rests on their revelations to the prosecutor about three defendants in a related cocaine-smuggling case. Appellants identified the individuals involved in

**6.** Several courts have recently found that 18 U.S.C. § 3553(b) (1988) (allowing departures for "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission") provides no such recourse. *See United States v. Bruno*, 897 F.2d at 695; *United States v. Taylor*, 868 F.2d 125, 126 (5th Cir.1989). We agree in general that, under ordinary circumstances, where the guidelines themselves adequately consider certain factors, departure cannot be based thereon. *See United States v. Williams*, 891 F.2d 962, 964 (1st Cir.1989); *United States v. Aguilar-Pena*, 887 F.2d at 350. It may well be that, because the guidelines address departures for

substantial assistance in section 5K1.1, departures for the same reason cannot be sustained under the generic terms of section 5K2.0. *See Bruno*, 897 F.2d at 695; *Taylor*, 868 F.2d at 126. Nevertheless, the possibility remains open that, if the government declines to move for a departure under circumstances where the omission is unmistakably arbitrary and capricious, the failure itself, as opposed to the rendering of substantial assistance, may be an "aggravating or mitigating circumstance" not envisioned by the Commission, and thus afford a basis for a downward departure. Having raised the possibility, however, we leave the matter undecided for the time being.

the criminal activity and gave the authorities some general information as to when a delivery of cocaine from Colombia to Puerto Rico might occur. They also expressed a willingness to continue cooperating in ongoing investigations.[7] The government's assessment was that the information did not warrant departing downward.

The Commission has admonished that "[s]ubstantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain." U.S.S.G. § 5K1.1 (application note). Taken in context, we see nothing so striking about the assistance which these defendants rendered as to call into question the government's decision to forgo a departure motion. Moreover, the court, with the government's blessing, exhibited leniency commensurate with the extent of defendants' cooperation, sentencing them at the bottom end of the guideline range and making their sentences concurrent with the sentences imposed in Florida. This was not, therefore, the rare case where governmental intractability in the face of overwhelming evidence of enormously fruitful cooperation might fairly be said to have deprived a defendant of his due. *Compare, e.g., United States v. Smitherman,* 889 F.2d 189, 191 (8th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1493, 108 L.Ed.2d 629 (1990) (refusing relief on facts of particular case although warning that, in extreme circumstances, "prosecutorial bad faith or arbitrariness ... might conceivably present a due process issue" if the government failed to file a section 5K1.1 motion).

## VII. CONCLUSION

We need go no further. Because neither 18 U.S.C. § 3553(e) nor U.S.S.G. § 5K1.1 offend a criminal defendant's right to substantive due process, appellants' convic-

tions, and the sentences from which they have appealed, must be

*Affirmed.*

---

**7.** The district court was well apprised on this score. The information concerning defendants' cooperation was made available to the trial court in the presentence report, by correspon-

dence from the government, by way of allocution, and in the course of the sentencing hearing.